Curia, per
O’Neall, J.
In this case, I will first consider the ground much argued, but which is really not made by the grounds of appeal — that the Judge below has no *702 right to order a non-suit, inasmuch as the parol proof to explain vary or contradict the written contract, was received without objection. It is most generally true, that if incompetent evidence be received without objection, it must go to the jury. But then two things occur. 1st; that the party against whom the testimony was offered might, when offered, have objected to it; and 2d; that when received it made a case on which the jury might legally find for the plaintiff. In this case neither of these exist. In the first place, the plaintiff rested his case altogether on a quantum, meruit, and undertook to show, that in that point of view, he was entitled to recover. It is true, Major McNeill said there was a written contract; but although the defendant might have said, produce that contract, yet the plaintiff could have replied, as his course in substance did, true, there is a written contract, but I will shew the work I did, and then produce the written contract, and it will then appear that my work is extra, and not embraced in it. Could the defendant have stopped him from thus travelling backward through his case 1 When, at the last, as his last piece of evidence, he presented the written contract, then the defendant had the right to read it, and say, all your proof is contrary to this instrument, and is therefore incompetent. But admit that the testimony was out, and that no objection to its incompetency could be urged, will the plaintiff be helped'? Certainly not. The defendant had the right to say, this written contract shews that all the work which you have done, and about which your evidence is given, was to be done, under it, and therefore it is not extra, and your quantum, meruit fails. This is the same thing as a demurrer to evidence. It says, taking your verbal evidence, and written evidence, you cannot recover. If it be true that the plaintiff was bound by the written contract to do the work, then it follows that he cannot recover; and if the jury had found for him again and again, we should be bound to set their verdict aside. This resolves the case into a plain legal question ; and about the right of a Judge to order a non-suit, under such circumstances, no doubt can be entertained. But as this point received much animadversion from both the plaintiff’s counsel, I may be indulged in try *703 ing to make a plain thing a little plainer. Suppose that to this claim for work done, the defendant had pleaded that the work was done under a written contract, and had set it out, and the plaintiff had admitted the written contract, but had averred the fact that the work done was not embraced in it; and the defendant had traversed the fact that the work was not embraced in the written contract, and issue had been joined, and the plaintiff had given the very proof now before the court, must not the Judge below have non-suited the plaintiff 1 There cannot be a doubt about it. In what respect does the plaintiff stand better now than he would then 1 In none, it seems to me. Under the plea of the general issue, non-assumpsit, he is bound to shew facts from which a promise, express or implied, is to arise. As soon as the written contract is shewn, if it covers the work done, the plaintiff fails to make a case entitling him to recover, unless he has shewn that his verbal evidence will so construe the written contract as to entitle him to regard the work as extra, or unless he has established a legal, verbal, express contract. It hence becomes necessary to examine these points of the case. Much of the learning and labor which this case has elicited, however creditable it may be to the bar, was altogether outside of the case, and I shall not attempt, therefore, to pursue it through all its ramifications. I shall, however, as I pass through the case, in the shortest way I can, endeavor to dispose of, satisfactorily, I hope, the main arguments. I admit that verbal evidence is admissible to shew a mistake in some written papers, such as a sum in a receipt, or the date of a deed, or to explain a consideration, but not entirely to contradict it, by shewing a different one. So, too, the rule of construction is, as contended for by the defendant, that the whole instrument is to be read, and not mere extracts. I am also satisfied, that where words are used susceptible of several meanings, that then the sense in which they are used, may be ascertained by proof of the subject matter to which the parties applied them. Wig-ram on Ex. Ev. 64, sec. 77. So, when words of a foreign language, or technical words of a trade, are used, then they may be explained by shewing the sense in which they were used. Wigwam Ex. Ev. 49, 58, 62, 76. So, too, the words *704 of a testator, or party contracting, are to be understood and judged of by the circumstances in which he was placed^ and to which his words would naturally apply. 3 Phil, by Cow. & Hill, 1408. Usage, too, may be resorted to, to explain words and terms in a contract, where they have no definite or a doubtful meaning.
Having made these admissions, which is, in general, pretty much an admission of the various legal propositions about which so much learning was displayed, I have now to shew that the whole difficulty of this case for the plaintiff arises from the fact that very little of the law cited for him applied to it. In the first place, it is necessary to construe the contract; in doing which I never have been unmindful of the rule that the whole contract is to be construed, and not parts. Read it all, and it in substance is, that the plaintiff undertook to make the line of roadway by excavations and embankments, from point to point, according to the plans and specifications; and for doing it, he was to be paid at so much (the contract reported 25-100 ; in another, 24-100 ; in others, 37-100, and 38-100,) per cubic yard of earth, which the respective sections may contain ; and if rock occurs, then additional for that, as may be determined by the engineer; and for grubbing and clearing, compensation was also to be fixed by the engineer. How can any one pretend that any work necessary to make that road, either in excavation or embankment, was extra work 1 If it were necessary to level mountains, dig through strata of iron or lead ore, or marl, or any other substance, it was to be done, because, to make the roadway, it was necessary the excavation should be made. Is the plaintiff entitled to any compensation for digging up iron ore, lead ore, or marl, if there had been any on the route 1 Read the contract. The work he was obliged to do; but he has accepted as his compensation, so much per cubic yard, for all the earth which the section may contain. By that I understand, not that you are to look to the substances which may be dug up, but after the excavation is made you measure it, and thus ascertain the cubic yards it contains. It is idle to say, when the party has stipulated to take that as his compensation, because his excavation was more difficult than he expected, that *705 therefore, he is to be paid for it. The defendant has the right to put his finger on the contract and say, there is what you were to do, here is what I am to pay. Could the plaintiff claim to be paid for the embankment 1 The same reason applies to it, which does to the alleged extra work of excavating hardpan. Nothing is said about compensation for it; yet it is plain that the plaintiff cannot recover for it, for he has accepted the admeasurement of the excavations for his compensation. Apply any other test arising out of other contracts. Suppose a man undertakes to build a house for another, and to cover it with tin, and to put marble steps in front, and agrees- to be paid for the work which he thus binds himself to do, by being paid so much per square for the weather-boarding and ceiling of the house, could he claim any compensation for his tin roof and marble steps'? Every one would say no. He has excluded himself from it by his contract. So here, the party plaintiff has bound himself to the defendant to do all the work, and accepted a compensation which, perhaps, covers only part of the work; but which, from its price, was intended, in point of fact, thus to compensate for all. But it is said, notwithstanding this is the literal meaing of the contract, yet that was not what was understood by both parties. How does that appear 'l The words are plain and intelligible ; there is no ambiguity, either apparent or latent. But it is argued, the term earth is of many meanings, and hence that its restricted meaning did not include hardpan. That might be conceded, and still the plaintiff would not be improved in his case, for if it does not include hardpan, still the plaintiff was willing to take it thus, as his standard of compensation. But I apprehend it was intended to include every thing except rocks, grubbing and clearing; and these very exceptions shew that it was thus used. Independent of that, the Report of 1838, page 42, shews that it was intended to exclude the allowance of hardpan. The chief engineer, in speaking of the average allowance for excavations, says, “ditto of more compact earth, such as is often termed hardpan, the worth and occurrence of which is usually affixed by the chief engineer, requiring the use of 3 picks to 2 shovels, and difficult, if not impossible, to loosen with the plough ; say *706 0.20 per cubic yard.” To this sentence the engineer appended a note, intended to qualify the parenthetical part of it. In it he says: “to avoid cavil on the part of the contractor, or the shadow of claim by him, I have, in consequence, omitted, heretofore, (and because extra allowances have always been made for unforeseen contingencies, at the discretion of the engineer,) any actual provision in the contract for hardpan, (a technical term quite indifferent in its application,) a very indurated and tenacious clay, exceedingly difficult to excavate.” It is fair to appeal to these sentences for the construction of the contract, as both parties have done so. What was the meaning of the engineer? Without stopping to notice that hardpan is here styled more compact earth, thus shewing that it was included in the term earth, the excavation of which furnishes the standard of compensation, and also that 20-100 is the average allowance for its excavation, four cents less than the lowest of these contracts, it will suffice to observe, that to shew that the engineer was not to allow, in these contracts, for hardpan, he had purposely omitted any allowance for it. Why so? To avoid cavil and the shadow of claim on the part of the contractor, on account of or for it, it was thus omitted; and the reason for doing it was, because extra allowances, at the discretion of the engineer, had been made for unforeseen contingencies. The meaning of that is, if the company thinks proper, their engineer may make reasonable extra allowances for unforeseen contingenceis.. But is it not plain that the contractor was not to have a shadow of claim, that is, legal claim ? He was to depend upon the equity of the company; if they thought, proper, their engineer would allow his claim for extra work.
But it is said this contract is to be construed according to the usage among engineers and rail road contractors. I have admitted that words and terms of ambiguous meaning might be construed by usage; but I deny that there is any principle in the law which will, by usage, add independent stipulations to a contract. The effect of the usage contended for here, is exactly that; it is, in substance, to add to this contract a provision by which the defendant is to be bound to pay to the plaintiff 18 3-4 cents additional, for every cubic yard of the hardpan excavation. *707 In 3 Phil, on Ev. by Cowen & Hill, upon which the defendant’s able counsel so much relied, it is said: “Mr. Dane lays it down as now, on the whole, a well settled rule of evidence, that the acts of the parties, or usage, may be proved to explain doubtful words or clauses in a deed or other sealed instrument.” Again, at 1409, the citation from Judge Story’s judgment, in the schooner Reeside, 12 Sumn. Rep. 569, 570, is given as follows: “The true and appropriate office of a usage, is to interpret the otherwise indeterminate intentions of the parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulations, but from mere presumptions and implications, and acts of a doubtful nature. It may also be admitted, to ascertain the true meaning of a particular wrord, or of particular words, in a given instrument, where the word or words have various senses, some common, some qualified, and some technical, according to the subject to which they are applied.” According to the first branch of the proposition, usage applies to cases where there is no express contract; and according to the second branch, to ascertain the meaning of words having various senses. To both of these parts of the proposition or rule, I yield my assent; but there is nothing in this case on which it can operate; for if earth has a common, qualified, or technical meaning, and if it be used here in the latter, and thus, by usage, excludes hardpan, still that will not do, for that may be conceded; yet the party has undertaken to do work including hardpan, and has not stipulated for any compensation on that account. The usage is modestly asked to go a step further, and not only explain words, but add to the contract a stipulation to pay for work which the party is bound to do, and for which he did not stipulate to be paid, and for which he was not to have “a shadoio of claim.” But it is said the action is not on the contract, and therefore the usage may set up the allowance. That would be true, if there was no contract at all; but here the parties understood one another, and reduced their contract to writing; and before the quantum meruit can be set up, the work done must be shewn to be more than that contract required to be done. That cannot be shewn, for every foot of excavation and embank *708 ment in the line of roadway, is covered by the contract. The case of DuBois vs. Delaware and Hudson Canal Company, 12 Wend. 334, 338, approaches nearer the plaintiff’s case than any other ; yet there is a wide difference between ■ it and this case. There, the different parts of the work, common excavation, rock and embankment, were specially provided for, and a general power to the engineer, to allow for extra work, caused by an alteration of the line, and to determine every other question riecessary for the settlement of the contract, was given. The engineer allowed for hardpan, and the question really there was, whether the engineer’s estimate was conclusive. It is true, Judge Sutherland says, “the contract makes no specific provision for hardpan and after stating the prices for common excavation, embankment and rock, he says, “all the evidence in the case shews that hardpan was considered extra work, and that it was not understood by the parties as embraced in the term excavation or embankment,” and hence he argued that the valuation of the engineer was not conclusive upon the plaintiff. That case, thus stated, does not decide any principle applicable to this. But it is true that it assumes that the excavation of hardpan was extra work, and it may be that the case in 4 Wend. 285, did so decide. Yet it is plain, that there the attempt was made to com- . pensate the plaintiff for all his work, common excavation, embankment and rock ; and it may be that the terms of that contract warranted the court in saying that his compensation was to be for each specific kind of work ; but certainly that was not the case here. A certain aggregate price, to be ascertained by the measurement of earth excavation, was to be the plaintiff’s compensation for every thing except rock, grubbing and clearing. Thus distinguishing that ease from this, it cannot have any effect upon it. In no point of view is it of authority upon us. We look to it only as the opinion of able jurists, which may enable us to come to a right conclusion. If it were in direct opposition to my conclusion, I should not hesitate when I see my way to it as clearly as I now do ; for, construing the whole contract by every principle contended for, and justly applicíablé to it, there is no doubt that the plaintiff has not done extra work.
*709 It is next necessary to consider the supposed verbal contract, by which it is alleged the company promised to pay for the supposed extra work. It will be observed, in looking into the testimony, that the whole extent of it is, that General Hayne, the president of the company, said that the usual allowance for hardpan should be made, and that he told McNeill, the engineer, to allow for it. The question was put to McNeill, the engineer, whether the plaintiff, on finding hardpan, stopped his work, and he said he did not." Taking all this testimony together, the result would be (as I have no doubt is the truth,) that General Hayne intended to be understood that if hardpan occurred in the contracts, that the company would make fair and just allowances for it. This, in other words, was saying to every contractor, you may rely upon the justice of the company, and if you make out a case of loss from hardpan, you will be compensated. This is any thing else than a contract. But on a nonsuit, the testimony must be regarded in the strongest point of view in which it can be legally considered for the plaintiff. Taking, therefore, the words of Gen. Hayne as a promise to pay for the excavation of hardpan, and that the company is bound by his promise, as their president, as far as it can have legal effect, the question will be, is such promise binding as a legal contract'? It is plain, to my mind, that it is not. Every contract, to be binding, must be founded on a consideration; if it be without, it is nudum pactum. Here, what was the consideration 1 None can be suggested. The plaintiff was bound to excavate hardpan by his contract; he was not to have “the shadow of claim” for it; and yet, for excavating it, the company agreed to pay him. There is in this no consideration. If he had stopped his work, and had preferred to abandon his contract rather than make the excavation, and thecompany, to induce him to go on, had agreed to pay him for it, then that would have been a new consideration, enough to support the contract. But where, as here, it was a promise to pay more for something, for the doing of which the plaintiff had agreed to accept less, it is a mere gratuity,'and it is altogether as the company might please, whether it shall be given or not. The case cited from 13 Pickering, 446, Richardson vs. Hooper, is very dis *710 tinguishable from this. There, the defendant, the supercargo of a vessel bound to South America, thence to Calcutta, and back to Boston, accepted the following proposition" from the plaintiff: “I am willing to submit the direction of the Smyrna to you until you have disposed of your outward cargo, and procured a freight for Calcutta or for Manilla. For all your services for me, while absent, I agree to pay you a commission of two and a half per cent, on sales in South America, and two and a half per cent, on purchases in Calcutta.” The proof was, that after this agreement was signed, on the way to the wharf, the defendant expressed a doubt as to the expediency of stopping at Monte Video, which had been left to his discretion by the shipper of the outward cargo, but said if he did, and there was either freight or passengers going round Cape Horn, he could get the same, and the plaintiff thereupon promised him, if he did, and obtained freight or passengers, that he should have half of the freight, and as to the passage money they would not differ about it, if he made good despatch. The defendant did stop at Monte Video, and obtained freight and passengers to Valparaiso, and received the money for the same. He contended he was entitled to retain one half of it. The principal item of controversy was the freight of the goods from Montevideo to Valparaiso ; and the question was, whether the proof of the subsequent contract was admissible. It was held that it was, inasmuch as the stopping at Monte Video was altogether in the defendant’s discretion, and that not being bound to stop there for either freight or passengers, and having doné so, and obtained both, “it was an additional service not covered by the written contract, and that, therefore, the defendant was entitled to the compensation which by the verbal contract the plaintiff agreed to give, one half of the freight.” In this case, the plaintiff was bound to do the work, and hence he did not offer, as the defendant did, in Richardson vs. Hooper, any new or additional service to support the additional compensation. But it is said, this claim ought to be supported, inasmuch as the plaintiff did the work, and the company have received it, and had the benefit of it. To this the answer is perfect. True, the work was done; but it was done under a written contract, it has *711 been received, measured and paid for exactly according to it, and you have now no claim for it, inasmuch as you cannot shew that you have done any work not covered by the contract in writing, and under the seal of the company.
In every point of view in which this case has been presented, I think the plaintiff is not entitled to recover, and in coming to that conclusion, it is no small consolation that in enforcing the strict principles of law against the plaintiff, exact justice is done between the parties.
The motion is dismissed.
Evans, Butler, Wardlaw, and Frost, JJ. concurred.
Richardson, J.
I think the non-suit ought not to have been ordered, but the evidence, if incompetent, rejected; and then the plaintiff might, possibly, have supplied other evidence and supported his case still.